# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RAY W. SMITH | CIVIL ACTION |
| VERSUS | NO. 09-2553 |
| DEPUTY JOE READHEAD, ET AL. | SECTION "C" (1) |

## REPORT AND RECOMMENDATION

Plaintiff, Ray W. Smith, a state pretrial detainee, filed this *pro se* civil action pursuant to 42 U.S.C. § 1983 against Deputy Joe Readhead and Sergeant Joy Elloit. Plaintiff alleges that his rights were violated when the defendants intentionally destroyed evidence he intended to use as part of his defense in his ongoing state criminal proceedings.

While this civil action has been pending, plaintiff has filed numerous documents, a conference has been held, and transcripts from the related state court proceedings have been obtained and reviewed. Based on the foregoing, the underlying facts of this dispute have become clear and are as follows.

On October 3, 2008, the St. Tammany Parish Sheriff's Office allegedly issued a policy which stated:

> Per Lt. Brooks and Sgt. Bennett,
>
> **Effective immediately, all inmates that leave dorms/tiers for transport will be only allowed the following items:**
>
> Bible/Koran *or* devotional booklet
>
> Legal papers (if going to court)

Medication

*<u>Clothing:</u>*

Either long john type pants and shirt *<u>or</u>* regular underwear and T-Shirt **(one each item)**

*<u>Only one</u>* **(1)** set of jail uniform clothes

*All inmates* must have their ID's (either paper or plastic)

**Any items found not listed above will be confiscated and disposed of.**

**<u>NO ITEMS WILL BE HELD ON TO OR RETURNED TO INMATE</u>**

Rec. Doc. 15, p. 7, Policy dated October 3, 2008 (emphasis in original).

As plaintiff was being transported to a state court hearing on December 16, 2008, he was searched by the defendants. In that search, officers found copies of photographs plaintiff was taking to court to give to his attorney for use as part of his defense against a state rape charge. Plaintiff argues that the photographs are exculpatory because they "depicted close family ties of my accuser, of myself, of his adopted dad and his brother sitting on a bail [sic] of hey [sic], laughing with their arms around me having fun on a hey [sic] ride just days prior before the false allegations made against me." <u>See</u> Rec. Doc. 27, transcript of January 15, 2009, p. 10; <u>see also</u> Rec. Doc. 42, transcript of April 14, 2009, p. 8. Pursuant to the foregoing policy, the photographs were confiscated and destroyed.

On December 18, 2008, two days after that incident, the Sheriff's Office reissued the policy. As reissued, the policy expressly stated that items such as pictures would be "disposed of" if carried by prisoners during transport. Rec. Doc. 9, p. 6, Policy dated December 18, 2008.

When plaintiff complained to the state trial judge that the exculpatory photographs had been destroyed, hearings were held on the issue. At a hearing on January 15, 2009, defendant Readhead testified as follows when questioned by plaintiff's criminal defense counsel:

> Q. Do you recall an incident on December 16th involving some photographs he had on his person when he was being transported from the jail to the courtroom?
>
> A. I don't recall the date but I remember him personally having pictures. Yes, sir.
>
> Q. Did you take those photographs away from him?
>
> A. I believe I was the one that took them from him. Yes, sir. If not it was another deputy who handed them to me.
>
> Q. Why did you take them from him?
>
> A. It is just against policy and procedure for them to bring any personal information, pictures or anything like that. There are only a couple few things they are allowed to bring over, such as specific legal documents, like anything from the Clerk of Court or from the D.A.'s office like their bill or anything like that, a bible and like one inmate pen. I don't know, we have a list actually of what they can bring over.
>
> Q. I'd like to see a copy of that list if I might. But did Mr. Smith explain to you that these photographs were important to the defense of his case?
>
> A. He told me they are for his case, but they are personal pictures and it is not up to us to decide which pictures people bring over are for their case or are personal pictures so therefore it is known at the jail that they are not to bring any

> personal pictures and like I explained to him, if they are for his case his attorney, which I guess is you, should have picked them up from the jail or he should have directly mailed them to your office.
>
> Q. Do you know what happened to the photographs?
>
> A. They were thrown away.

Rec. Doc. 27, transcript of January 15, 2009, pp. 2-4. Defendant Elloit also testified at that hearing and likewise stated that plaintiff's photographs were confiscated and destroyed in the normal course of business solely because they violated the established transportation policy. Id. at pp. 27-28.

At a later hearing, after it appeared that copies of the photographs might not be available, the prosecutor offered to enter into a stipulation regarding the evidence:

> MR. BARTHLOMEW [the prosecutor]:
> ....
> The State offered a stipulation at the hearing, and that offer remains open, which I think addresses any damage that may have been done to the defendant. The State will stipulate to something I can craft with Mr. Craig [defense counsel], basically to the defendant's testimony of what he said those pictures contained. I think that's the most we can do, and the best case scenario for him, is that his testimony as to what he thought those pictures had in them. We will stipulate that those pictures existed and that they are unavailable to the defendant because of something done by the State's act and that they contained what he said in his testimony that they contained.

Rec. Doc. 42, transcript of April 14, 2009, p. 5; see also id. at p. 9.

Ultimately, however, any harm which might potentially have resulted from the destruction of the photographs has now been averted. In a conference held by the undersigned on May 28, 2009, plaintiff stated that he has been able to obtain new copies of the photographs which had previously

4

been confiscated and destroyed by the defendants. Plaintiff has provided those photographs to his counsel for use in his defense at the upcoming trial on the pending criminal charge.

## Motions for Default Judgment

As a preliminary matter, the Court notes that plaintiff has filed two motions for default judgment. Rec. Docs. 29 and 34. Those motions should be denied for several reasons.

First, the motions were premature because a default had not yet been entered pursuant to Fed.R.Civ.P. 55(a). Griffin v. Foti, Civ. Action No. 03-1274, 2003 WL 22836493, at *1 (E.D. La. Nov. 24, 2003); Great Atlantic and Pacific Tea Co. v. Heath, Civ. Action No. 95-509, 1995 WL 258317, at *1 (E.D. La. Apr. 27, 1995).

Second, federal law provides that no relief shall be granted to a prisoner in a civil action unless the defendants have filed a reply and, moreover, the defendants are under no obligation to file a reply in any such action unless ordered to do so by the Court. 42 U.S.C. § 1997e(g)(1). In this case, the Court did in fact order defendants to file a reply, and they ultimately complied with that order within the extended time granted to them. Rec. Docs. 4, 15, 24, and 32. Therefore, the defendants were not in default.

Third, in any event, the entry of a default judgment is matter of discretion, and "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default. In fact, default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." Lewis v. Lynn, 236 F.3d 766, 767 (5th Cir. 2001) (quotation marks, brackets, and citations omitted); Griffin, 2003 WL 22836493, at *1. This not such a situation in light of the fact that plaintiff's complaint should be dismissed for the reasons set forth in this opinion.

5

Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).[1]

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

---

[1] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted), cert. denied, 128 S. Ct. 1230 and 1231 (2008). The United States Supreme Court recently explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

Although broadly construing the complaint,[2] the Court nevertheless finds that, for the following reasons, plaintiff's claims must be dismissed as frivolous and for failing to state a claim on which relief may be granted.

---

[2] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

## *Habeas Corpus* Claims

The Court first notes that one form of relief requested by plaintiff is "release from custody." Rec. Doc. 1, p. 5. That form of relief cannot be granted in a civil rights action brought pursuant to 42 U.S.C. § 1983. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see also Boyd v. Biggers, 31 F.3d 279, 283 n.4 (5th Cir. 1994).[3]

---

[3] It would be futile to construe the instant complaint in part as a petition seeking *habeas corpus* relief pursuant to 28 U.S.C. § 2241 because plaintiff has not exhausted his claims in the state courts.
   The United States Fifth Circuit Court of Appeals has held:

> Section 2241(c)(3), which empowers district courts to issue the writ before a judgment is rendered in a criminal proceeding, makes no reference to exhaustion. Despite the absence of an exhaustion requirement in the statutory language of section 2241(c)(3), a body of case law has developed holding that although section 2241 establishes jurisdiction in the federal courts to consider pre-trial habeas corpus petitions, federal courts should abstain from the exercise of that jurisdiction if the issues raised in the petition may be resolved either by trial on the merits in the state court or by other state procedures available to the petitioner.
>     The exhaustion doctrine of section 2241(c)(3) was judicially crafted on federalism grounds in order to protect the state courts' opportunity to confront and resolve any constitutional issues arising within their jurisdictions as well as to limit federal interference in the state adjudicatory process.

Dickerson v. Louisiana, 816 F.2d 220, 225 (5th Cir. 1987); see also Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973). The Court of Appeals has further held:

> [A] claim is not exhausted unless the habeas petitioner provides the highest state court with a "fair opportunity to pass upon the claim," which in turn requires that the applicant "present his claims before

Institution of Criminal Proceedings

Plaintiff also requests that defendants be "arrested, prosecuted, fined and or confined" for their actions. Rec. Doc. 1, p. 5. Those forms of relief are likewise unavailable in a § 1983 action. Federal courts are not investigative or prosecutorial agencies.[4] Individuals seeking the criminal investigation or prosecution of alleged wrongdoers should request the intervention of the appropriate law enforcement authorities, not the federal courts.

Damages

Lastly, plaintiff requests monetary damages. Rec. Doc. 1, p. 5. That form of relief is, of course, available in a § 1983 action. However, plaintiff is not entitled to damages because his § 1983 claim for destruction of evidence is legally frivolous.

---

> the state courts in a procedurally proper manner according to the rules of the state courts."

Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999) (quoting Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988)).
  Therefore, a Louisiana pretrial detainee generally cannot proceed to federal court pursuant to § 2241 unless he has first presented his claims to the state's highest court, the Louisiana Supreme Court, in a procedurally proper manner. Because the Louisiana Supreme Court has never been afforded a "fair opportunity" to pass upon plaintiff's *habeas* claims, the claims would not be exhausted.

[4] Indeed, the commencement of federal prosecutions is a matter of discretion left to the executive branch of government. As the United States Fifth Circuit Court of Appeals has noted,

> Although as a member of the bar, the attorney for the United States is an officer of the court, he is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case. It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys for the United States in their control over criminal prosecutions.

United States v. Cox, 342 F.2d 167, 171 (5th Cir. 1965).

The United States Fifth Circuit Court of Appeals has noted:

> To state a claim under section 1983, a plaintiff must allege facts tending to show (1) that he has been deprived of a right secured by the Constitution and the laws of the United States, and (2) that the deprivation was caused by a person or persons acting under color of state law.

Bass v. Parkwood Hospital, 180 F.3d 234, 241 (5th Cir. 1999) (quotation marks omitted). For the following reasons, it is clear that there has been no constitutional violation in this case.

When a state actor is accused of failing to preserve or destroying evidence in connection with a criminal proceeding, the arrested individual can establish a constitutional violation only if he is able to show that (1) the state actor acted in bad faith, (2) the evidence was material in showing the individual's innocence, and (3) the individual cannot demonstrate his innocence in alternate ways, such as by obtaining comparable evidence through other reasonably available means. See United States v. Thompson, 130 F.3d 676, 686 (5th Cir. 1997); see also United States v. Price, 298 Fed. App'x 931, 937 (11th Cir. 2008), cert. denied, 129 S.Ct. 2020 (2009); United States v. Mejia, 291 Fed. App'x 79, 81 (9th Cir. 2008); United States v. Ossai, 485 F.3d 25, 28 (1st Cir.), cert. denied, 128 S.Ct. 279 (2007); United States v. LaVallee, 439 F.3d 670, 699 (10th Cir. 2006); United States v. Stewart, 388 F.3d 1079, 1085 (7th Cir. 2004).

Even if the Court assumes for the purposes of this decision that the photographs at issue here are "material" evidence of plaintiff's innocence, it is clear that plaintiff cannot make the other two showings required to establish a constitutional violation.

First, there is no indication that the defendants acted in bad faith; rather, they were simply enforcing a routine jail policy regarding possession of contraband during transport of prisoners.

Moreover, that policy is not in itself facially problematic, in that it is reasonably related to the accomplishment of the legitimate governmental objectives of maintaining order, public safety, and jail security.[5] Although it would have been preferable here if the defendants had exercised some discretion and common sense by simply confiscating the photographs and returning them after transport, their failure to do so is not indicative of bad faith.

Second, plaintiff's ability to prove his innocence has not been impeded as a result of the destruction of the photographs. Even if additional copies of the photographs had not been located, plaintiff could have availed himself of the proposed stipulation. As noted, the prosecutor was willing to stipulate at trial that the destroyed photographs showed exactly what plaintiff alleged. In any event, however, plaintiff does not even have to consider that acceptable alternative because copies of the destroyed photographs have now been located, provided to defense counsel, and are available for use as part of plaintiff's defense in the state criminal trial. Accordingly, any concerns over a potential due process violation resulting from destruction of the photographs are now moot, and plaintiff has suffered no compensable harm in this case.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's motions for default judgment, Rec. Docs. 29 and 34, be **DENIED**.

---

[5] It cannot reasonably be argued that the policy is merely a subterfuge employed by jail officials as a means to destroy exculpatory evidence. It is clear that the policy is enforced uniformly and that *all* unapproved items are confiscated and destroyed regardless of their nature. Moreover, there is no suggestion that jail officials routinely make it a practice to destroy exculpatory evidence, and, as Readhead noted at the state court hearing, the incident here could have been easily avoided if only defense counsel or someone else had simply picked up the photographs at the jail or plaintiff had mailed them to defense counsel.

It is **FURTHER RECOMMENDED** that plaintiff's claims be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this sixth day of July, 2009.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**